United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 13, 2006**

Charles R. Fulbruge III
Clerk

In the
# United States Court of Appeals
## for the Fifth Circuit

———————

m 05-50543
Summary Calendar

———————

ENRIQUE HERNANDEZ-CASTILLO,

Petitioner-Appellant,

VERSUS

MARC J. MOORE,
AS FIELD DIRECTOR FOR DETENTION AND REMOVAL
FOR THE IMMIGRATION AND CUSTOMS ENFORCEMENT;
BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT,
AS AN AGENCY OF THE GOVERNMENT OF THE UNITED STATES OF AMERICA;
DEPARTMENT OF HOMELAND SECURITY,
AS AN AGENCY OF THE GOVERNMENT OF THE UNITED STATES OF AMERICA;
MICHAEL CHERTOFF,
SECRETARY, DEPARTMENT OF HOMELAND SECURITY;
ALBERTO R. GONZALES,
U.S. ATTORNEY GENERAL,

Respondents-Appellees.

———————

Appeal from the United States District Court
for the Western District of Texas

———————

Before SMITH, GARZA, and PRADO,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Enrique Hernandez-Castillo, a removed alien, challenges the ruling of an immigration ("IJ") that he is not eligible for a waiver of removal under now-repealed § 212(c) of the Immigration and Nationality Act ("INA"). Treating this action as a petition for review, and agreeing with the ruling of the IJ, we vacate the finding of habeas jurisdiction and deny the petition for review.

I.

Hernandez-Castillo, a native and citizen of Mexico, was admitted into the United States as a lawful permanent resident in 1985. In 1989 he was tried to a jury and convicted of felony indecency with a child. The Immigration and Naturalization Service ("INS")[1] initiated removal proceedings against Hernandez-Castillo in 2001, asserting that (1) he was removable pursuant to 8 U.S.C. § 1227(a)(2)-(A)(iii) on the ground that he had been convicted of an "aggravated felony," which is defined by 8 U.S.C. § 1101(a)(43)(A) to include sexual abuse of a minor, and (2) he was removable pursuant to 8 U.S.C. § 1227(a)-(2)(A)(i) because he had been convicted of a crime of moral turpitude, for which a sentence of one year or longer could have been imposed, within five years after his admission into the United States.

---

[1] The INS ceased to exist on March 1, 2003. Its enforcement functions have been assumed by the Bureau of Immigration and Customs Enforcement ("BICE"), an agency within the Department of Homeland Security. Because many of the events in this case took place before the reorganization of immigration enforcement duties, we continue to refer to the agency as the INS.

Hernandez-Castillo conceded that he was removable as charged, but requested a waiver of removal under § 212(c), a provision that was formerly codified at 8 U.S.C. § 1182(c) but had been repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-597. The repeal was effective immediately upon its enactment.

Hernandez-Castillo argued that despite the repealer, he is entitled to pursue relief under that provision pursuant to *INS v. St. Cyr*, 533 U.S. 289, 326 (2001), in which the Court stated that "§ 212(c) relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect."

The IJ found that Hernandez-Castillo was ineligible for § 212(c) relief, *St. Cyr* notwithstanding, because he had been convicted of a removable offense following a jury trial rather than through a guilty plea. In November 2002 the IJ ordered that Hernandez-Castillo be removed to Mexico. Hernandez-Castillo filed a timely appeal to the BIA, which affirmed the removal order without opinion in March 2004.

On August 9, 2004 (the same day on which he had been ordered to report to the San Antonio office of the Department of Homeland Security for removal), Hernandez-Castillo filed a petition for writ of habeas corpus challenging the removal order on the ground that he had been unlawfully denied the right to seek a waiver of the order. He also requested a temporary restraining order and preliminary injunctive relief to prevent the immigration authorities from removing him before the district court ruled on the habeas petition. But, be-

cause the removal had been scheduled to take place on that very day, Hernandez-Castillo was removed to Mexico before the district court could rule on the request for a temporary restraining order.

On August 20, 2004, the government filed a motion to dismiss the habeas petition, which the district court granted in March 2005, after first finding that it had jurisdiction to entertain the petition. The court held that Hernandez-Castillo was ineligible for § 212(c) relief. Hernandez-Castillo appealed that order on March 29, 2005.

## II.

After Hernandez-Castillo filed his appeal, Congress on May 11, 2005, enacted the REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231. The Act explicitly forecloses habeas review of removal orders and provides that a petition for review is the sole and exclusive means of judicial review for all removal orders except those issued pursuant to 8 U.S.C. § 1225-(b)(1). *See* Pub. L. No. 109-13, 119 Stat. 231, 310, § 106(a)(1)(B). The Act specifies that a habeas petition pending before a district court as of the REAL ID Act's effective date is to be transferred to the appropriate court of appeals and converted into a petition for review. *See* Pub. L. No. 109-13, 119 Stat. 231, 311, § 106(c). Congress did not, however, dictate what was to be done with habeas petitions, such as Hernandez-Castillo's, that were already on appeal as of the REAL ID Act's effective date.

Nevertheless, we recently held in *Rosales v. BICE*, 426 F.3d 733, 736 (5th Cir. 2005) (per curiam), *cert. denied*, 2006 U.S. LEXIS 619 (U.S. Jan. 9, 2006), that "despite Congress's silence on this issue, habeas petitions on appeal as of May 11, 2005, . . . are properly con-

verted into petitions for review."[2] Pursuant to the REAL ID Act, we therefore vacate the district court's finding of habeas jurisdiction and convert the habeas petition into a petition for review of the removal order.

## III.

We must now determine whether we have jurisdiction to entertain this petition for review under the REAL ID Act. The Act amends 8 U.S.C. § 1252(a)(2)(C) to preclude all judicial review, habeas or otherwise, where a removal order is based on, *inter alia*, the alien's commission of an aggravated felony. *See* Pub. L. No. 109-13, 119 Stat. 231, 310, § 106(a)(1)(A)(ii). The Act also altered the INA to provide that

> [n]othing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D). Because Hernandez-Castillo's claim that the IJ erred in applying the repeal of § 212(c) to his case presents a question of law, we have jurisdiction to consider the petition.

## IV.

We review the BIA's conclusions of law *de novo*, although we defer to the BIA's interpre-

---

[2] The Third and Ninth Circuits have reached the same conclusion. *See Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1052-53 (9th Cir. 2005); *Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005).

tation of immigration regulations if that interpretation is reasonable. *See Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 444 (5th Cir. 2001). Although we generally have authority to review only the order of the BIA, where, as in this case, the BIA summarily affirms the ruling of the IJ without an opinion, we review the IJ's order. *See Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997). In this case, no deference is owed to the IJ's conclusion of law regarding the availability of § 212(c) relief because that conclusion was based on principles of retroactivity rather than the content of the immigration regulations.

There is a two-step process for determining whether a statute (or the repeal thereof) has an impermissible retroactive effect. First, a statute must be given retroactive effect if Congress has communicated, with clarity, its intent that the law be applied retroactively. *See St. Cyr*, 533 U.S. at 316 (citing *Martin v. Hadix*, 527 U.S. 343, 352 (1999)). Second, where a clear statement from Congress is lacking, there is an impermissible retroactive effect where the application of the statute "attaches new legal consequences to events completed before [the statute's] enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994).

In *St. Cyr*, the Court held that in repealing § 212(c), Congress did not give a clear indication of its intent retroactively to strip the availability of § 212(c) relief away from aliens convicted of removable offenses before the enactment of IIRIRA. *St. Cyr*, 533 U.S. at 320. In addition, the Court held that "IIRIRA's elimination of any possibility of § 212(c) relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly attaches a new disability, in respect to transactions or considerations already past." 533 U.S. at 321 (internal citations and quotations omitted). Therefore, the

Court concluded that the repeal of § 212(c) cannot apply retroactively to pre-enactment convictions of a removable offense pursuant to a guilty plea.

The Court did not address whether the application of IIRIRA to pre-enactment convictions following a jury trial, rather than pursuant to a guilty plea, yields an impermissible retroactive effect. In the wake of *St. Cyr*, at least two circuits have concluded that there is no impermissible retroactive effect where the conviction was not the result of a plea. *See Chambers v. Reno*, 307 F.3d 284 (4th Cir. 2002); *Rankine v. Reno*, 319 F.3d 93 (2nd Cir. 2003). The *Rankine* court stated that

> aliens who chose to go to trial are in a different position with respect to IIRIRA than aliens like St. Cyr who chose to plead guilty. . . . First, none of these petitioners detrimentally changed his position in reliance on continued eligibility for § 212(c) relief . . . . Second, the petitioners have pointed to no conduct on their part that reflects an intention to preserve their eligibility for relief under § 212(c) by going to trial. If they had pled guilty, petitioners would have participated in the *quid pro quo* relationship, in which a greater expectation of relief is provided in exchange for forgoing a trial, that gave rise to the reliance interest emphasized by the Supreme Court in *St. Cyr*. As the Court made clear, it was that reliance, and the consequent change of immigration status, that produced the impermissible retroactive effect of IIRIRA. *St. Cyr*, 533 U.S. at 325 . . . . Here, petitioners neither did anything nor surrendered any rights that would give rise to a comparable reliance interest.

*Rankine*, 319 F.3d at 99-100. We adopt this reasoning and conclude that the application of

4

IIRIRA's repeal of § 212(c) to Hernandez-Castillo does not create an impermissible retroactive effect. Accordingly, we agree with the IJ's order declaring Hernandez-Castillo ineligible for § 212(c) relief.[3]

In summary, we VACATE the district court's finding of habeas jurisdiction, convert the habeas petition into a petition for review, and DENY the petition for review.

---

[3] Hernandez-Castillo contends that he should now be given an opportunity to present evidence that he had been offered a plea agreement before his trial for felony indecency with a child and chose instead to take his chances with a jury because § 212(c) relief might be available to him if he were convicted at trial. He equates the refusal to take a plea agreement with detrimental reliance on § 212(c). As the *Rankine* court makes clear, however, Hernandez-Castillo's argument is nonsensical:

Unlike aliens who entered pleas, the petitioners made no decision to abandon any rights and admit guilt--thereby immediately rendering themselves deportable--in reliance on the availability of the relief offered prior to IIRIRA. The petitioners decided instead to go to trial, a decision that, standing alone, had no impact on their immigration status. Unless and until they were convicted of their underlying crimes, the petitioners could not be deported. The claim that they relied on the availability of § 212(c) relief in making the decision to go to trial is therefore somewhat hollow . . . ."

*Rankine*, 319 F.3d at 99.