# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 17, 2011

Lyle W. Cayce
Clerk

No. 10-60044
Summary Calendar

MANUEL AVELAR-CRUZ,

Petitioner,

versus

ERIC H. HOLDER, JR., U.S. Attorney General,

Respondent.

Petition for Review of an Order of
the Board of Immigration Appeals
BIA No. A 036  636  673

Before DAVIS, SMITH, and SOUTHWICK, Circuit Judges.
JERRY E. SMITH, Circuit Judge:[*]

Manuel Avelar-Cruz petitions for review of a decision of the Board of Immigration Appeals ("BIA") holding that he is ineligible to apply for relief from

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-60044

removal based on former § 212(c) of the Immigration and Nationality Act ("INA") because he has failed to show actual, subjective reliance on the statute before its repeal. Because Avelar-Cruz has not provided evidence so compelling that any reasonable adjudicator would believe he has actively engaged in conduct reflecting an intention to preserve his eligibility for relief, we deny the petition.

I.

Avelar-Cruz, a citizen of Mexico, became a lawful permanent resident of the United States in 1982. In 1992, he was convicted by a state jury of false imprisonment and aggravated battery, both felonies.

In 2008, the Department of Homeland Security ("DHS") brought removal proceedings against Avelar-Cruz pursuant to the INA. The notice to appear ("NTA") alleged that Avelar-Cruz was subject to removal as an alien convicted of an aggravated felony after his admission to the United States,[1] making him deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) (2006).

At his initial hearing, Avelar-Cruz admitted the allegations contained in the NTA and conceded that he was removable, but he requested a waiver of removal under former INA § 212(c) (8 U.S.C. § 1182(c) (1994) (repealed 1996)). The immigration judge ("IJ") granted a § 212(c) waiver and an adjustment of status under § 245 of the INA. DHS reserved the right to appeal, then filed a motion for reconsideration before the IJ, arguing that, under *Carranza-de Salinas v. Gonzales*, 477 F.3d 200, 204-05, 207-10 (5th Cir. 2007), Avelar-Cruz was not eligible for a § 212(c) waiver, because his 1992 convictions resulted from a trial by jury rather than a guilty plea, and at the time Avelar-Cruz chose to proceed with a jury trial, he did not have an actual, subjective reliance on the continued availability of a § 212(c) waiver.

---

[1] *See* 8 U.S.C. § 1101(a)(43)(F) (2006) (defining crimes of violence with a term of imprisonment greater than one year as aggravated felonies).

2

No. 10-60044

In response, the IJ held another hearing, at which Avelar-Cruz testified that he knew of the § 212(c) waiver at the time of his criminal trial and that one of the reasons he wanted to go to trial instead of plead guilty was that he believed the waiver would still be available to him if he did. He said that he had delayed his application for the waiver so he could acquire additional "proof to be able to demonstrate that I had rehabilitated my life."

In support of his "rehabilitation," Avelar-Cruz presented the following evidence: He has lived in the United States for about thirty years; he owns a house in Roswell, New Mexico; he owns and operates his own tile business; he owns three vehicles; he has been married to a United States citizen since 1981; and he has five United States-citizen children. He also testified that his 1992 convictions were the result of alcohol and a bad relationship. He further stated that he no longer drinks; he has a relationship with his children; and his church has "helped me change my life." He said that, since his convictions seventeen years ago, he has created a new life in which he helps others, including volunteering with ministry and music at the prison where he was formerly incarcerated.

When questioned as to his knowledge of the § 212(c) waiver, Avelar-Cruz stated that he had a conversation with his attorney at the time of his criminal trial about the conditions of the waiver. When asked what kind of waiver he was referring to, he responded, "Well, waiver. A waiver because there are laws in which there are ways to request a pardon or waiver for cases such as this one." He did not know the legal name of, or the form number for, the waiver, but merely stated that he knew of "a waiver available to keep [him] from being deported." He also testified that his attorney did not offer that he apply for the waiver and that he did not ask his attorney to do so, because he did not yet have proof that he had "rehabilitated [his] life." He could not, however, remember his previous attorney's name and did not have any documents to confirm his conversation with his attorney about the waiver.

3

No. 10-60044

Avelar-Cruz was taken into DHS custody in 2008 after he attempted to re-new his green card. He said that he "knew" he would be taken into custody when he went to renew his green card, "because [he] knew that this case that [he] had had was going to end up with an immigration judge or with an immigration officer." He said he nevertheless felt secure with being taken into custody, because "back then I knew that I had enough proof so that I could demonstrate that I had rehabilitated and that I was doing good."

Based on the foregoing evidence, the IJ determined that Avelar-Cruz, despite "his obvious efforts to tailor his responses . . . to fit the Fifth Circuit's ruling in *Carranza*," was not eligible for § 212(c) relief, because he did not actively engage in conduct that reflected an intent to preserve his eligibility for § 212(c) relief. The IJ found that Avelar-Cruz's passive actions of waiting for an "undetermined day in the 'eventual' future" to seek § 212(c) relief did not show that he had made an affirmative decision to postpone filing his application to increase his likelihood of receiving § 212(c) relief or establish a reasonable reliance interest on the continued availability of § 212(c) relief. As a result, the IJ granted DHS's motion for reconsideration, vacated its order, denied Avelar-Cruz's request for a § 212(c) waiver, and ordered that he be removed to Mexico. The BIA dismissed Avelar-Cruz's appeal, agreeing with the IJ that, in light of Avelar-Cruz's passivity in seeking § 212(c) relief until he was placed in removal proceedings twelve years after his release from prison, he did not show that he had made an affirmative decision to wait to apply for § 212(c) relief in an effort to increase the likelihood of success based on his rehabilitation.

II.

A.

We have authority to review only the BIA's decision, not the IJ's, unless the latter has some impact on the former. *Mikhael v. INS*, 115 F.3d 299, 302

No. 10-60044

(5th Cir. 1997). We must decide the petition only on the administrative record, and the administrative findings of fact are conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4) (2006). We review the BIA's conclusions of law *de novo* but defer to its reasonable interpretation of immigration regulations. *Carranza-de Salinas v. Gonzalez*, 477 F.3d 200, 203 (5th Cir. 2007). We owe no deference to the BIA's conclusions of law regarding the availability of § 212(c) relief. *Hernandez-Castillo v. Moore*, 436 F.3d 516, 519 (5th Cir. 2006).

B.

Avelar-Cruz argues that the BIA erred when it found him ineligible for a § 212(c) waiver on the ground that he did not show an actual, subjective reliance on the availability of the waiver under the INA. Former § 212(c) of the INA stated, in pertinent part,

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . . The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

8 U.S.C. § 1182(c) (repealed 1996). Aliens who pleaded guilty to a deportable offense before the repeal of § 212(c) remained eligible for § 212(c) relief even after repeal, because otherwise the repeal of the statute would have had an impermissible retroactive effect. *INS v. St. Cyr*, 533 U.S. 289, 319, 326 (2001). That is because the decision to plead guilty and receive a sentence that would leave the alien eligible for § 212(c) relief was likely made in reliance on the continuing availability of § 212(c) relief. *Id.* at 323.

Although *St. Cyr* settled that aliens who pleaded guilty to a deportable of-

5

fense before the repeal of § 212(c) remained eligible to apply for § 212(c) waivers even after repeal, the Supreme Court has not addressed the issue whether eligibility for such relief remains available to aliens who proceeded to trial. Relying on *Rankine v. Reno*, 319 F.3d 93, 99-100 (2d Cir. 2003), this court concluded that the repeal of § 212(c) relief did not operate retroactively as to aliens who were convicted at trial before repeal, because, in electing to go to trial, they did not detrimentally rely on continued eligibility for § 212(c) relief. *Hernandez-Castillo v. Moore*, 436 F.3d 516, 520 (5th Cir. 2006).

The next year, however, we considered an alternative theory according to which § 212(c)'s repeal might be impermissibly retroactive as to an alien who was convicted after a trial rather than a guilty plea. *See Carranza-de Salinas*, 477 F.3d at 209. There, before the repeal of § 212(c), the petitioner was convicted by a jury of possessing marihuana with intent to distribute. *Id.* at 202. In 1997, a year after repeal, she received an NTA charging that she was removable based on her prior conviction. *Id.* at 203. She requested relief under former § 212(c), but the BIA held that a § 212(c) waiver was available only to aliens convicted pursuant to a plea agreement. *See id.*

Petitioner appealed, arguing that the repeal of § 212(c) was impermissibly retroactive with respect to her case, because "she affirmatively chose not to apply for § 212(c) relief immediately after her conviction, but instead to wait until deportation proceedings were initiated so as to have time to establish her rehabilitation and ties to the community." *Id.* at 209. We reversed, relying on *Restrepo v. McElroy*, 369 F.3d 627, 634-35 (2d Cir. 2004), holding that "the BIA erred in finding [Carranza] ineligible to apply for § 212(c) relief without allowing her the opportunity to demonstrate that her actual, subjective reliance on the prior state of the law caused her to delay her application." *Carranza-de Salinas*, 477 F.3d at 202. We held that if petitioner could "demonstrate on remand that she affirmatively decided to postpone her § 212(c) application to increase her likelihood

No. 10-60044

of relief, then she has, under *Hernandez-Castillo*, established a reasonable 'reliance interest' in the future availability of § 212(c) relief comparable to that of the applicants in *St. Cyr* and she is entitled to make her application for relief." *Id.* at 210.

After *Carranza-de Salinas*, we require an applicant who alleges eligibility for § 212(c) relief to demonstrate "actual, subjective reliance" on § 212(c) before its repeal. *Id.* The applicant must show that he "'detrimentally changed his position in reliance on continued eligibility for § 212(c) relief,' or that he actively engaged in conduct that 'reflect[ed] an intention to preserve [his] eligibility for relief under § 212(c).'" *Id.* at 205 (quoting *Rankine*, 319 F.3d at 99-100). The determination of retroactive effect is made as to the individual applicant. *Id.*

Avelar-Cruz contends that, like the petitioner in *Carranza-de Salinas*, he knew that he could apply for § 212(c) relief upon his release from prison, but he affirmatively chose not to apply immediately, to have time to show rehabilitation and to form ties to the community. In this regard, Avelar-Cruz argues that his actions over the years (such as owning a house, running his own business, marrying a U.S. citizen, caring for his five United States-citizen children, refraining from drinking, and volunteering at his church and the prison where he was formerly held) provide "tangible proof and objective evidence of his actual mind set" to rehabilitate himself while he patiently waited for the opportunity to apply for § 212(c) relief. Avelar-Cruz further asserts that when he sought to renew his green card, he knew of the likelihood that he would be placed in removal proceedings because of his prior convictions, but he saw it as a chance to obtain § 212(c) relief.

But whether Avelar-Cruz did in fact affirmatively choose not to apply immediately apply for § 212(c) relief, in order to show rehabilitation, is a question

7

No. 10-60044

of fact,[2] and "any reasonable adjudicator would [not] be compelled" to disagree with the BIA's determination that he did not so choose. *See* 8 U.S.C. § 1252-(b)(4). Avelar-Cruz has no evidence––other than his testimony during removal proceedings––that he discussed obtaining § 212(c) relief with his attorney at the time of his trial.

It is suspicious that Avelar-Cruz is not only unaware of any specifics regarding the § 212(c) waiver, but also cannot even remember the lawyer who defended him at his criminal trial and who supposedly told him about the availability of § 212(c) waivers. Yet, Avelar-Cruz vividly remembers the conversation. Moreover, although the mere fact that an alien has "let a considerable time elapse before offering to demonstrate rehabilitation" does not imply that he did not intend to file for a § 212(c) waiver,[3] the fact that Avelar-Cruz did not so much as contact an attorney, or at least develop some knowledge regarding how to obtain a § 212(c) waiver—his only legal means of remaining in the country—before being placed in removal proceedings twelve years after he was released from prison suggests that he was not actually planning someday to seek a waiver.

Avelar-Cruz has therefore not provided evidence so compelling that any reasonable adjudicator would believe he has actively engaged in conduct reflecting an intention to preserve his eligibility for relief. *See* 8 U.S.C. § 1252(b)(4); *Carranza-de Salinas*, 477 F.3d at 205. The petition for review is DENIED.

---

[2] *See Carranza-de Salinas*, 477 F.3d at 210 (implying that whether the petitioner had "established a reasonable 'reliance interest' in the future availability of § 212(c) relief comparable to that of the applicants in *St. Cyr*" was something she would have to demonstrate factually on remand).

[3] *See id.* at 209 (quoting *Matter of Gordon*, 17 I. & N. Dec. 389, 391-92 (BIA 1980)) (noting that common sense suggests that a recently convicted alien would wait a long time before trying to prove he had been rehabilitated).